UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ROBIN ALVES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:15-cv-00484 |
| | ) JUDGE CRENSHAW |
| AHS MANAGEMENT COMPANY, INC., d/b/a ARDENT HEALTH SERVICES, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

Pending before the Court is AHS Management Company, Inc., d/b/a Ardent Health Services' ("Ardent" or "Defendant") Motion for Summary Judgment ("Motion"). (Doc. No. 23.) For the reasons stated below, the Motion will be **GRANTED**.

I. UNDISPUTED FACTS

   *A. Plaintiff's Position and Performance*

Robin Alves ("Alves" or "Plaintiff") began working for Ardent as a Helpdesk Shift Lead on February 17, 2003 and, on November 15, 2004 was promoted to Helpdesk Manager. (Doc. No. 30, ¶¶ 1, 3.) She provided technical support to Ardent's hospitals and health care workers. (Doc. No. 35, ¶¶ 1–2.)

In March 2013, Ardent hired Steve Penny ("Penny") as its Vice President of Information Technology and Chief Technology Officer. (Doc. No. 30, ¶ 12.) Alves began reporting directly to Penny. (Id. at ¶¶ 10–11.) In Alves' 2013 performance review, Penny identified several areas that Alves needed to improve. (Id. at ¶ 17; Doc. No. 26-1, p. 52.) On October 20, 2014, Penny informed Alves that her current performance was negative and she still needed to work on the

issues he identified in her 2013 performance review. (Doc. No. 30, ¶¶ 19–20.) He told her that she was not a "good fit" for her current position. (Id. at ¶ 20.) The following day, Alves applied for a lower-level position at Ardent as a revenue cycle analyst (id. at ¶ 21) that was "put on hold" (Docs. No. 31-1, 91:22–93:12; 35, ¶ 20).

   2. *Plaintiff's Medical Conditions*

On February 23, 2015, Alves was diagnosed with carpal tunnel and scheduled for surgery on March 6. (Doc. No. 30, ¶¶ 31–32.) That same day, she applied for leave under the Family Medical Leave Act ("FMLA"), by contacting Ardent's third-party FMLA leave administrator, FMLASource. (Id. at ¶ 33.) Alves also contacted Ashley Whitaker ("Whitaker"), an employee in Ardent's human resources department who was responsible for coordinating leave, to inform her of the upcoming surgery, inform her that she had contacted FMLASource, and ask if she needed to provide anything else. (Id. at ¶ 34.) Whitaker told Alves that she would need a doctor's note, which she submitted. (Id.) During this conversation, Whitaker approved Alves' FMLA leave request because she needed surgery right away. (Doc. No. 31-1, 149:19-23.)

   3. *Plaintiff's Termination*

In late 2014, Penny spoke with Steven Wilder (Wilder"), a human resources employee at Ardent, about potentially terminating Alves. (Doc. No. 30, ¶ 22.) Penny completed Alves' performance appraisal for 2014 and came to the conclusion that her role was not a good fit for her. (Id. at ¶ 23.) In January 2015, Penny began interviewing candidates to replace Alves. (Id. at ¶ 27.) On February 19, 2015, Penny informed Wilder that he intended to terminate Alves on February 25, 2015. (Id. at ¶ 29.) On February 24, 2015, Alves advised Penny that she would need time off for surgery on her wrists. (Doc. No. 30, ¶ 35.)

On the morning of February 25, Wilder told Whitaker that Alves would be terminated that day. (Id. at ¶ 38.) Whitaker then told Wilder that Alves had just applied for FMLA. (Id.) Wilder did not inform Penny, prior to Alves' termination, that she had requested FMLA leave. (Doc. No. 31-12, 67:21–68:3.) That same day, Penny and Wilder met with Alves and terminated her employment. (Doc. No. 30, ¶ 39.) Penny never commented to Alves about carpal tunnel and no one said that her termination was because of her carpal tunnel. (Id. at ¶¶ 43, 45).

II. STANDARD OF REVIEW

In reviewing a motion for summary judgment, this Court will only consider the narrow question of whether there are "genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court is required to view "the facts and reasonable inferences in the light most favorable to the nonmoving party . . . ." Ferrari v. Ford Motor Co., 826 F.3d 885, 891 (6th Cir. 2016) (citing Cass v. City of Dayton, 770 F.3d 368, 373 (6th Cir. 2014)). Summary judgment in a case brought under the FMLA or the Americans with Disabilities Act ("ADA") may be appropriate if there is no disputed fact on an essential element of plaintiff's claims, such as knowledge of the decision-maker. See Henderson v. Chrysler Group, LLC, 610 F. Appx. 488, 492 (6th Cir. 2015) (granting summary judgment dismissing FMLA and ADA claims where the decision-maker had no knowledge of plaintiff's medical leave).

III. ANALYSIS

Alves alleges that Ardent violated (1) the FMLA, 29 U.S.C. § 2615(a), by unlawfully discharging her and retaliating against her for invoking her right to use FMLA-protected leave and (2) the ADA, 42 U.S.C. § 12112(a), by terminating her due to her disability, failing to

3

accommodate her disability by denying her request for leave to undergo surgery for the disability, and retaliating against her for asserting her rights under the ADA. (Doc. No. 15, ¶¶ 17–45.)

### A. *FMLA Claims*

Alves brings her FMLA claims under the interference and retaliation provisions. (Doc. No. 1, ¶¶ 17–30.) Ardent argues that Alves' FMLA claims fail as a matter of law because she cannot establish (a) that Ardent knew she requested FMLA leave prior to deciding to terminate her (Doc. No. 24, p. 10); (b) a causal connection between her FMLA leave request and her termination (id. at pp. 11–13); or (c) that Ardent's reasons for terminating her were pretextual (id. at pp. 13–19). Alves counters that "numerous genuine issues of material fact" preclude the Court from granting summary judgment, including, "a fact question regarding when Mr. Penny did or could become aware of [her] need for carpal tunnel surgery and used it against her in his decision to terminate her." (Doc. No. 33, pp. 1, 8.)

#### 1. FMLA Interference Claim

To state a prima facie case of FMLA interference, the plaintiff must demonstrate that (1) she is an eligible employee; (2) the defendant is an employer as defined in the Act; (3) she was entitled to leave under the FMLA; (4) she gave the defendant notice of her intention to take leave; and (5) the defendant denied her FMLA benefits to which she was entitled." Demyanovich v. Cadon Plating & Coatings, LLC, 747 F.3d 419, 427 (6th Cir. 2014) (citing Edgar v. JAC Products, Inc., 443 F.3d 501, 507 (6th Cir. 2006)). However, "an employee may be lawfully dismissed, preventing him [or her] from taking FMLA leave, if the dismissal would have occurred regardless of the employee's request for . . . leave." Parks v. UPS Supply Chain Solutions, Inc., 607 F. App'x 508, 518 (6th Cir. 2015).

The undisputed facts in this case establish that Ardent decided to terminate Alves "well before" she requested FMLA leave. (Doc. No. 24, p. 10.) On February 2, 2014, Penny gave Alves

4

a negative 2013 performance review. (Docs. No. 30, ¶ 17; 26-1, p. 52.) On October 20, 2014, Penny gave Alves negative feedback about her job performance in 2014. (Doc. No. 30, ¶¶ 19–20.)

In late 2014, Penny let Wilder know that he would "potentially" terminate Plaintiff's employment. (Id. at ¶ 22.)[1] Penny's opinion that Alves should be terminated was reinforced when he "completed Plaintiff's performance appraisal for the year 2014[.]" (Id. at ¶ 23.)[2] Penny prepared for Alves' termination in January 2015, when he began seeking her replacement, which he continued to do in the days before her termination. (Id. at ¶¶ 27, 30.) It is undisputed that, on February 19, 2015, Penny informed Wilder that he was ready to terminate Alves, and they scheduled it for February 25, 2015. (Id. at ¶ 29.) The record shows, without dispute, that Penny decided to terminate Alves prior to February 23, 2015, the date Alves was first diagnosed with carpal tunnel syndrome.

Alves claims that there is "a fact question regarding when" Ardent became aware of her need for carpal tunnel surgery and made the decision to terminate her. (Doc. No. 33, p. 8.) The undisputed material facts establish that, at the very latest, Ardent, through Alves' supervisor, Penny, decided to terminate her on February 19, 2015. (Doc. No. 30, ¶ 29.) If Alves was not even diagnosed with carpal tunnel until February 23, it was impossible for Penny to know, when he decided to terminate Alves on February 19, that she had a medical condition. (Doc. No. 30, ¶ 31.) Therefore, Alves was "lawfully dismissed, preventing [her] from taking FMLA leave, [because]

---

[1] Pursuant to L. R. 56.01(g) "Failure to respond to a moving party's statement of material facts … within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment." As Alves did not respond to this statement of material fact submitted by Ardent, the Court finds that it is undisputed for purposes of summary judgment.
[2] Id.

5

the dismissal would have occurred regardless" of her January 23 request for leave. Parks, 607 F. App'x at 518.

    2. FMLA Retaliation Claim

The main question in a FMLA retaliation claim is "whether the employer took the adverse action because of a prohibited reason or for a legitimate non[-retaliatory] reason." Seeger v. Cincinnati Bell Tel. Co., LLC., 681 F.3d 274, 282 (6th Cir. 2012) (quoting Edgar v. JAC Prods., Inc., 443 F.3d 501, 508 (6th Cir. 2006)). To establish a prima facie case, Alves must show that (1) she engaged in an activity protected under FMLA; (2) Ardent knew she was exercising her FMLA rights; (3) she suffered an adverse employment action; and (4) there was a causal connection between her FMLA activity and the adverse employment action. Donald v. Sybra, Inc., 667 F.3d 757, 761 (6th Cir. 2012) (quoting Killian v. Yorozu Auto. Tenn., Inc., 454 F.3d 549, 556 (6th Cir. 2006)).

In the instant case, Alves' cannot establish a prima facie case of FMLA retaliation because she cannot show that the decision-maker—Penny—knew she was exercising her FMLA rights and, as a result, terminated her. Id. First, it is undisputed that, at the very latest, Penny decided to terminate Alves on February 19, 2015. (Doc. No. 30, ¶ 29.) Second, it is undisputed that Alves was first diagnosed with carpal tunnel on February 23, at least four days after Penny made the final decision to terminate her. (Id. at ¶ 31.) Consequently, Penny did not know she was exercising her FMLA rights until after he decided to terminate her.

Although Alves contends that Penny "had knowledge of [her] on-going health problems, indeed the actual diagnosis" (Doc. No. 33, p. 8.), the portion of the record Alves cites only reflects that Alves informed Penny "several days before" her scheduled termination that she "was going to take time off to have wrist surgery." (Doc. No. 31-10, p. 18.) Indeed, Alves has not cited any

6

evidence in the record that demonstrates that Penny was aware of her "on-going health problems" or her "actual diagnosis" of carpal tunnel before Ardent made the final termination decision on January 19. (Doc. No. 33, p. 8.) According to the undisputed facts, only two Ardent employees were aware of Alves' FMLA leave request prior to her actual termination. Whitaker received notice of Alves' request for FMLA leave on February 23. (Doc. No. 30, ¶¶ 33–34.) Whitaker conveyed that knowledge to Wilder on January 25, the morning before Alves' scheduled termination, when Wilder informed her that the termination would occur that day. (Id. at ¶ 38.) However, there is no evidence that Wilder shared that information with Penny. (Doc. No. 31-12, 67:21–68:3.)

The Sixth Circuit has declined to impute one employee's awareness of a plaintiff's health condition to another employee who makes the termination decision, absent a showing that the terminating employee had actual knowledge of the condition. See Niles v. Givaudan Flavors Corp., 521 F. App'x 364, 368–69 (6th Cir. 2013) (citing Burns v. City of Columbus, Dep't of Pub. Safety, Div. of Police, 91 F.3d 836, 844 (6th Cir. 1996) (holding that plaintiff could not establish a prima facie case of disability discrimination because he had failed to show that the members of a review board that made the ultimate decision to terminate him knew of his disability); Landefeld v. Marion Gen. Hosp., Inc., 994 F.2d 1178, 1181–82 (6th Cir. 1993) (holding that because "it was the Board of Directors, and not the president, who suspended plaintiff," plaintiff could not state a claim of disability discrimination where "[t]here is no showing that the Board had any knowledge of plaintiff's mental illness") (other citations omitted)). In Niles, the Sixth Circuit affirmed the district court's grant of summary judgment where a plaintiff brought FMLA and ADA discrimination and retaliation claims challenging his termination. Id. at 364. Niles argued that a jury must be allowed to determine if one human resources employee's knowledge of his multiple

sclerosis could be imputed to the "sole decision-maker for his termination[.]" Id. at 368. The Sixth Circuit found that, because both employees discussed plaintiff's termination generally and the record contained no evidence that they discussed plaintiff's condition, Niles could not establish the knowledge element of a prima facie discrimination claim. Id. at 369. Similarly, in the instant case, the undisputed material facts show that Penny made the decision without knowledge of Alves' alleged serious health condition. Consequently, Alves cannot establish the knowledge element of a prima facie case for FMLA retaliation.

### B. ADA Claims

Ardent argues that Alves' ADA retaliation and discrimination claims fail as a matter of law because she cannot establish that (1) her alleged disability was the "but-for" cause of her termination (Doc. No. 24, pp. 21–23); (2) that Ardent's reasons for terminating her were pretextual (id. at pp. 23–24); or (3) that Ardent failed to provide her with the requested disability accommodations (id. at pp. 24–25). Alves claims she "provided enough information that Defendant knew of its obligation to accommodate and Defendant has a duty to 'make a reasonable effort to determine the appropriate accommodation.'" (Doc. No. 33, p. 14 (citing 29 C.F.R. pt. 1630 App. § 1630.9; White v. Honda of Am. Mfg., Inc., 191 F. Supp. 2d 933, 950–51 (S.D. Ohio 2002)).)

The ADA provides that no covered entity shall discriminate against a qualified individual on the basis of a disability. 42 U.S.C. § 12112(a). To establish a prima facie discrimination claim under the ADA, a plaintiff must show that (1) she has a disability; (2) she is otherwise qualified to perform the requirements of her job, with or without reasonable accommodations; (3) she suffered an adverse employment action because of her disability; and (4) the employer knew or had reason to know of her disability; and (5) her position remained open while the employer sought other

applicants or replaced her. Ferrari, 826 F.3d at 891 (citing Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1178 (6th Cir. 1996)). To establish a prima facie retaliation claim under the ADA, a plaintiff must prove that "(1) the plaintiff engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." Rorrer v. City of Stow, 743 F.3d 1025, 1046 (6th Cir. 2014) (citing Gribcheck v. Runyon, 245 F.3d 547, 551 (6th Cir. 2001)).

Even assuming, *arguendo*, that Alves could establish that she was disabled, qualified to perform the requirements of her job with or without accommodations, and engaged in an activity protected by the ADA, the undisputed material facts establish that Penny was unaware of her alleged disability or that Alves made a request for a reasonable accommodation before he made the decision to terminate her employment. (Doc. No. 30, ¶¶ 29, 31–34, 37–38.) Without such evidence, her discrimination and retaliation claims under the ADA fail as a matter of law.

IV. CONCLUSION

Accordingly, the Court will **GRANT** Defendant's Motion for Summary Judgment (Doc. No. 23) and **DISMISS** the Complaint (Doc. No. 1).

An appropriate order will enter.

                                                       _____
                                                      WAVERLY D. CRENSHAW, JR.
                                                      UNITED STATES DISTRICT COURT